UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-190S<br><br>Judge William E. Smith<br><br>Class Action<br><br><u>JURY TRIAL DEMANDED</u> |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON,<br><br>Defendants. | Civil Action No. 02-264S |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

NOW COME Lead Plaintiffs in the above-captioned matter and hereby move the Court for an Order (1) granting preliminary approval to the proposed settlement of this case as set forth in the attached Stipulation of Settlement ("Stipulation"), dated December 29, 2005; (2) approving the form and manner of giving notice to the Class of the Settlement; and (3) setting a hearing for final approval of the Settlement, the terms of which provide for a cash payment for the benefit of the Class of $7,000,000 plus interest from the date of deposit.

This motion is supported by the attached memorandum, the Stipulation of Settlement,

including all exhibits, and the proposed Preliminary Approval Order.

Respectfully Submitted,

By: William M. Kolb

William M. Kolb, Esq.
LAW OFFICES OF WILLIAM M. KOLB, LLC
One Ship Street
Providence, Rhode Island 02903
Tel: (401) 490-8297
Fax: (401) 490-8299

Liaison Counsel for Plaintiffs

Dated: December 30, 2005

Michael I. Behn, Esq.
BEHN & WYETZNER, CHARTERED
55 West Wacker Drive, Suite 950
Chicago, Illinois 60601
Tel: (312) 629-0000

Ira M. Press, Esq.
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 371-6600

Plaintiffs' Co-Lead Counsel

Ronald L. Futterman, Esq.
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
(312) 427-3600

Kirk E. Chapman, Esq.
MILBERG WEISS BERSHAD
& SCHULMAN, LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300

Additional Counsel for Plaintiffs

Certificate of Service

I hereby certify that on the 30th day of December, 2005, a true and accurate copy of Plaintiff's' Motion for Preliminary Approval of the Settlement was served by first class mail, postage prepaid, upon the following:

Michael I. Behn, Esq.
Behn & Wyetzner, Chartered
55 W. Wacker Drive
Suite 950
Chicago, Illinois 60601

Ira M. Press, Esq.
Mark Strauss, Esq.
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, New York 10022

Ronald L. Futterman, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603

David J. Bershad, Esq.
Kirk Chapman, Esq.
Milberg Weiss Bershad Hynes
& Lerach LLP
One Pennsylvania Plaza
New York, NY 10019

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

John A. Tarantino, Esq.
Paul V. Curcio, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

Eileen M. Kolb

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOEL ROSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH, and TERRY D. STINSON | C.A. 02-190S |
| LESLIE TURBOWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>TEXTRON INC., LEWIS B. CAMPBELL, JOHN A. JANITZ, THEODORE R. FRENCH and TERRY D. STINSON | C.A. 02-264S<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT** |

William M. Kolb, Esq.
LAW OFFICES OF WILLIAM M. KOLB, LLC
One Ship Street
Providence, Rhode Island 02903
(401) 490-8297

Plaintiffs' Liaison Counsel

Michael I. Behn, Esq.
BEHN & WYETZNER, CHARTERED
55 West Wacker Drive, Suite 950
Chicago, Illinois 60601
(312) 629-0000

Ira M. Press, Esq.
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, New York 10022
(212) 751-2540

Plaintiffs' Co-Lead Counsel

Dated: December 30, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .... ii

INTRODUCTION .... 1

I. FACTUAL AND PROCEDURAL BACKGROUND .... 1

II. REASONS FOR THE SETTLEMENT .... 3

III. TERMS OF THE SETTLEMENT .... 4

IV. STANDARDS FOR APPROVAL .... 4

A. This Court Has Already Certified this Action as a Class Action .... 6

B. Criteria To Be Considered In Deciding Preliminary Approval .... 7

1. There are No Grounds to Doubt the Fairness of the Settlement, Which Is The Product of Extensive, Adversarial Litigation and Arm's-Length Negotiations .... 9

2. The Settlement Falls within the Range of Possible Approval .... 10

V. THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE .... 13

1. The Proposed Schedule .... 15

CONCLUSION .... 16

## TABLE OF AUTHORITIES

**CASES** **Page**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) . . . . . 6

*Arata v. Nu Skin Int'l, Inc.*,
1993 U.S. App. Lexis 21747 (9th Cir. Aug. 24, 1993) . . . . . 5

*Bussie v. Allmerica Fin. Corp.*,
50 F.Supp.2d 59 (D.Mass.1999) . . . . . 8

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) . . . . . 6

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir.1974),
*overruled on other grounds by*
*Missouri v. Jenkins*, 491 U.S. 274, (1989) . . . . . 7, 12

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,,
100 F.3d 1041 (1st Cir. 1996) . . . . . 7

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) . . . . . 13

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
183 F.3d 1 (1st Cir. 1999) . . . . . 5

*Galdi Sec. Corp. v. Propp*,
87 F.R.D. 6 (S.D.N.Y. 1979) . . . . . 8

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
855 F. Supp. 825 (E.D.N.C. 1994) . . . . . 6

*In re Bromine Antitrust Litig.*,
203 F.R.D. 403 (S.D. Ind. 2001) . . . . . 6

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) . . . . . 8

*In re General Motors Corporation Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir.1 995) . . . . . 8

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) . . . . . 13

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) . . . . . 5

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) . . . . . 5

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass 2005) . . . . . 8

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) . . . . . 5

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) . . . . . 13

*Lake v. First Nationwide Bank*, 900 F. Supp 726 (E.D. Pa. 1995) . . . . . 13

*Livingston v. Toyota Motor Sales USA, Inc.*, 1995 U.S. Dist. Lexis 21757 (N.D. Cal. May 30, 1995) . . . . . 5

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) . . . . . 5, 7, 9, 12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414 (1968) . . . . . 9

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) . . . . . 9

*Roland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) . . . . . 9

*Rolland v. Cellucci*, 191 F.R.D. 3 (D. Mass. 2000) . . . . . 8

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982),
*corrected on other grounds*,
1983 U.S. App. Lexis 31033 (2nd Cir. Jan. 26, 1983) . . . . . . . . . . 7, 9

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) . . . . . . . . . . 5, 6, 13

**STATUTES**

15 U.S.C. §§ 78 . . . . . . . . . . 2

Fed. R. Civ. P. 23 . . . . . . . . . . *passim*

Securities Exchange Act of 1934 § 10(b) . . . . . . . . . . 2

Securities Exchange Act of 1934 § 20(a) . . . . . . . . . . 2

Securities Exchange Act of 1934 § 21D . . . . . . . . . . 1

**OTHER AUTHORITIES**

3B James Wm. Moore, MOORE'S FEDERAL PRACTICE ¶23.80[2.-1] (2d ed. 1996) . . . . . . . . . . 5

5 James Wm. Moore,MOORE'S FEDERAL PRACTICE ¶23.80[1] (3d ed. 2001) . . . . . . . . . . 13

H. Newberg, NEWBERG ON CLASS ACTIONS, § 8.34 (3d ed. 1992) . . . . . . . . . . 14

MANUAL FOR COMPLEX LITIGATION (THIRD) (1995) . . . . . . . . . . *passim*

## INTRODUCTION

In support of their motion for preliminary approval of settlement, Lead Plaintiffs respectfully submit that the proposed Settlement of this Action for $7 million plus accrued interest satisfies all of the relevant legal standards for preliminary approval under Fed. R. Civ. P. 23. The settlement is eminently fair considering the amount of the recovery for the Class and risks of further litigation. There is nothing to suggest collusion or fraud between the parties. The settlement resulted from intensive arm's-length negotiations that spanned weeks, if not months. These negotiations began before a mediator in spring 2004, and were undertaken in good faith by both sides The Settlement reflects a reasoned compromise based on Plaintiffs' Counsel's comprehensive knowledge of the strengths and weaknesses of the case gained through a long, intensive discovery and motion practice over the course of three and one-half years.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Action began when Plaintiffs filed their complaint on April 26, 2002, in the United States District Court for the District of Rhode Island, and the case was assigned Civil No. 02-190S ("the Action"). Defendants are Textron Inc., Lewis B. Campbell, John A. Janitz, Theodore R. French and Terry D. Stinson. An additional class action was filed on June 6, 2002 and on September 27, 2002, the Court consolidated the two actions for all purposes (collectively the "Action") and granted the motion of Local 710 Funds to be appointed lead plaintiff under §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") and approved lead plaintiffs' selection of Futterman & Howard, Chtd., and Kirby McInerney & Squire, LLP as Plaintiffs' Co-Lead Counsel. The Court also appointed Kaplan & Kolb, Inc. as liaison counsel for plaintiffs pursuant to §21D(a)(3)(B)(v) of the Exchange Act. By order of December 21, 2005, the Court appointed Behn

& Wyetzner, Chartered as an additional Co-Lead Counsel and the Law Offices of William M. Kolb, LLC as new liaison counsel.[1]

On December 13, 2002, Plaintiffs filed their Amended Complaint, which alleged claims against the Defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j & 78t) and Rule 10b-5 promulgated under Section 10(b) by the Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5). The Amended Complaint sought damages based upon allegations that, among other things, the Defendants were liable under the Exchange Act for misrepresentations during the Class Period relating to Textron's accounting in connection with certain government contracts, including a Bell Helicopter/Textron Inc. contract relating to the V-22 Osprey, tiltrotor aircraft. Defendants filed a motion to dismiss the Amended Complaint on March 26, 2003.

On April 30, 2002, the Court entered an order granting in part and denying in part Defendants' motion to dismiss and, on May 11, 2005, the Court certified Plaintiffs' claims for class treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class is comprised of:

> All persons or entities who purchased or otherwise acquired the securities of Textron Inc. between October 19, 2000 and September 26, 2001, inclusive.

Over the course of nearly three and a half years, the parties engaged in formal and informal factual discovery, including extensive document productions from both the Defendants and third parties, class and merits depositions. The parties also engaged expert witnesses to support their respective positions.

---

[1] The lead attorney on this case at the Futterman firm, Michael Behn, left that firm in late 2005 to form Behn & Wyetzner.

While Defendants' motion to dismiss was *sub judice*, the parties met with The Honorable Nicholas H. Politan (Ret.) to mediate the case. The parties met with Judge Politan while the defendants' motion to dismiss was pending, but were unable to reach a resolution of the Action at that time. After the parties had conducted extensive additional document discovery and after a series of candid and frank discussions that took place over the course of several weeks, the parties were able to reach an arm's-length agreement to in principle to settle the Action for the sum of $7,000,000 and executed the Stipulation of Settlement and supporting exhibits reflecting the terms of the proposed settlement, dated December 29, 2005.

## II. REASONS FOR THE SETTLEMENT

Plaintiffs' Counsel have conducted a thorough investigation into and analysis of the facts and the law relating to the matters at issue in the Action, have interviewed dozens of witnesses, and have reviewed thousands of pages of material concerning Textron and its accounting practices. Plaintiffs' Counsel, and the experts retained by them, have considered carefully the likelihood of success in the Action and the likely total damages which could be recovered against Defendants; have conducted extensive arm's-length settlement negotiations with counsel for Defendants and their insurers; and have determined, after taking into account the substantial benefits conferred on the Class by the Settlement, that the Settlement would be fair, reasonable and adequate and in the best interests of the Class.

Plaintiffs believe that the proposed settlement is a good recovery and is in the best interest of the Class. The principal reason for the settlement is the significant benefit to be provided to the Class now. This benefit must be compared to the risk that no recovery might be achieved after a contested trial and likely appeals, possibly years into the future. In particular, during the course of

discovery, plaintiffs discovered very little in the way of evidence that during the class period Textron knew about the accounting issues related to the V-22 tiltorotor aircraft program. Moreover, very little of the September 26, 2001 charge (which triggered the Textron price decline) related to the V-22 program (and the Court had dismissed all of the non-V-22 claims).

## III. TERMS OF THE SETTLEMENT

The Settlement resolves all claims of the Class against all Defendants upon the following terms. Defendants have agreed to cause $7,000,000 to be paid into a Settlement Fund on behalf of Plaintiffs and the Class. The Settlement Fund has been deposited into an escrow account and is earning interest until distributed to the Class.

The Stipulation also provides for the form and manner of class notice, the proof of claim procedures, the procedures for seeking exclusion from the Class or objecting to any terms of the Settlement, and the procedure by which Lead Counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this Action.

## IV. STANDARDS FOR APPROVAL

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). As this Court knows from experience, there are three steps to be taken by the court in considering the merits of a proposed class-action settlement: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a final hearing must be held, after which the court must decide whether the proposed settlement is fair, reasonable and adequate. See MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 236 (1995).

The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of possible approval." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 237. Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their view of the settlement. *See* 3B James Wm. Moore, MOORE'S FEDERAL PRACTICE ¶23.80[2.-1], at 23-479 (2d ed. 1996). Preliminary approval is merely the prerequisite to giving notice so that members of a class have "a full and fair opportunity to consider the proposed [settlement] and develop a response." *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983).

In considering a potential settlement, the trial court does not have to reach any ultimate conclusions on the substantive factual or legal issues of plaintiffs' claims. *Id.* It also need not engage in a trial on the merits, for the purpose of settlement is precisely to avoid such a trial. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).[2] The relevant inquiry is to "[weigh] the

---

[2] Courts in other circuits have followed this analysis in deciding whether preliminary approval is appropriate. *See Arata v. Nu Skin Int'l, Inc.*, 1993 U.S. App. Lexis 21747 at *7 (9th Cir. Aug. 24, 1993) (in approving settlement, panel notes that the "in accordance with the procedures outlined in the Manual for Complex Litigation . . . district court evaluated the proposed settlement and granted preliminary approval."); *Livingston v. Toyota Motor Sales USA, Inc.*, 1995 U.S. Dist. Lexis 21757 at *24 (N.D. Cal. May 30, 1995) (preliminary approval recommended where special master concluded that the proposed settlement "[fell] within the range of possible approval" because "(a) the negotiations occurred at arm's length; (b) there was sufficient discovery; [and] (c) the proponents of the settlement are experienced in similar litigation"); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (citing MANUAL FOR COMPLEX LITIGATION preliminary approval standard at § 30.41); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (same); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383-84 (D. Md. 1983) (same).

plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Williams v. Vukovich*, 720 F.2d at 922 (*quoting Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

Courts have also noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (holding that the issue at the preliminary approval is whether there is "probable cause" to justify notifying the class members of the proposed settlement); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Id.* Here, experienced counsel for Lead Plaintiffs and Defendants, after a long course of adversarial litigation and negotiations, have concluded that the proposed settlement is in the best interests of their respective clients. The settlement merits preliminary approval.

**A. This Court Has Already Certified this Action as a Class Action**

A certified class such as the one before the Court, by definition, already meets the prerequisites for final approval under Rules 23(a) and 23(b) pursuant to the Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Given that the suitability of plaintiffs' claim for class treatment has already been fully investigated, briefed and adjudicated in the Court, and there being no further question as to the manageability of plaintiffs' claim on a class-wide basis, there should be no further impediment to effectuating the terms of the Settlement.

As a result of that prior certification, the Court's review of the proposed settlement for the purpose of final approval focuses on two questions, whether it is: (i) tainted by fraud or collusion; and (ii) fair, reasonable and adequate:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.

*Officers for Justice*, 688 F.2d at 625

In answering the first question, courts examine "the negotiating process by which the settlement was reached" as well as whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability ... necessary [for] effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *corrected on other grounds*, 1983 U.S. App. Lexis 31033 (2nd Cir. Jan. 26, 1983).[3]

**B. Criteria To Be Considered In Deciding Preliminary Approval**

While the First Circuit has not established a formal protocol for assessing the fairness of a settlement, other circuits have identified factors deemed appropriate for consideration. The most commonly referenced factors were identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274, (1989):

---

[3] *See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043-44 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is presumption in favor of settlement.")

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass 2005).[4]

Courts have emphasized that a preliminary fairness analysis is undertaken with "a strong initial presumption that the compromise is fair and reasonable." *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000) (quoting *Galdi Sec. Corp. v. Propp*, 87 F.R.D. 6, 9 (S.D.N.Y. 1979)); *see also Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 77 (D. Mass. 1999). That presumption of fairness arises as a general matter when the settlement is reached through "arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION (THIRD), supra, § 30.42, at 240. The storm warnings indicative of collusion are a "lack of significant discovery and [an] extremely expedited settlement of questionable value accompanied by an enormous legal fee." *SeeIn re General Motors Corporation Pick-up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 801 (3d Cir.1 995). No such circumstances are present here.

If the settlement is not collusive, the evaluation focuses on whether, given the risks of litigation and the range of probable results, ". . . the settlement, taken as a whole, is fair, reasonable

---

[4] As noted by the court in *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, "[t]here is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement. In making this assessment, other circuits generally consider the negotiating process by which the settlement was reached and the substantive fairness of the terms of the settlement compared to the result likely to be reached at trial." 216 F.R.D. 197, 206 (D. Me. 2003).

and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In doing so, the Court must balance the potential rewards of continued litigation against the risk of recovering less or nothing at all and "compare the terms of the compromise with the likely rewards of litigation."[5]

In assessing the fairness of the settlement, courts may not adjudicate the merits of the action, substitute their judgment for that of the parties who negotiated the settlement, or "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement."[6]

Finally, when experienced counsel support the settlement, as here, their opinions are entitled to considerable weight. See also *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Roland,* 191 F.R.D. at 15.

### 1. There are No Grounds to Doubt the Fairness of the Settlement, Which Is The Product of Extensive, Adversarial Litigation and Arm's-Length Negotiations

The criteria for evaluating a request for preliminary approval have been summarized thus:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MANUAL FOR COMPLEX LITIGATION §30.41, at 238. Under these criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

---

[5] *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424-25 (1968)).

[6] *See also Weinberger*, 698 F.2d at 74 ("The Supreme Court could not have intended that, in order to avoid a trial, the judge must in effect conduct one.")(citations omitted)

There are no grounds to doubt the fairness of the proposed settlement, which is the product of extensive litigation, and month-long arm's-length negotiations. Based upon their familiarity with the factual and legal issues of this litigation (obtained through procedural, dispositive and discovery motion practice, as well as over three years of formal discovery and several weeks of settlement negotiations), the parties were ultimately able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The litigation, and the settlement negotiations, were at all times hard-fought and at arm's length, and have produced a result that the Lead Plaintiffs believe to be in the best interests of the Class.

**2. The Settlement Falls within the Range of Possible Approval**

The Court is aware of the general background and litigation experience of Plaintiffs' Co-Lead Counsel and counsel for Defendants. They are experienced in prosecuting and defending class actions for securities fraud. Using that litigation experience, Plaintiffs' Counsel were capable of making, and did make, well-informed judgments about the adequacy of the settlement.

They exercised that experience based on a comprehensive knowledge of the facts of the case and legal issues facing Lead Plaintiffs as well as their judgments about the strengths and weaknesses of the case. Moreover, the proposed settlement is not being presented for approval at or close to the outset of a case based on negotiations that were not disclosed to the Court. Rather the parties reached an agreement only after contesting the case over the course of nearly three and one-half years and as the result of mediation proceedings mandated by the Court and presided over by an experienced retired federal judge.[7] Specifically, the proposed settlement was reached only after

---

[7] The Hon. Nicholas H. Politan is a retired Judge of the United States District Court for the District of New Jersey (1987 to 2002). During his time on the bench and since retiring, he (continued...)

serious arms'-length negotiations between the parties counsel, after almost three and one-half years of extensive motion practice and discovery, which included the review of millions of pages of documents produced by Defendants and third parties, and after taking or defending depositions, and following consultation with expert consultants in the areas of: damages as well as auditing and accounting issues. Counsel's decision to enter into the Stipulation was made with knowledge of the facts and circumstances underlying Plaintiffs' claims and the strengths and weaknesses of those claims.

Plaintiffs' Counsel brought all of this information to bear in the settlement negotiations and used it to make a presentation during mediation concerning the merits of the claims. Plaintiffs' Counsel used the same information to evaluate the strength of the defenses to those claims. They discussed the merits of their claims and the defenses at great length with the mediator and took all of the circumstances of the case into account in deciding on the compromise set forth in the Stipulation of Settlement.

In evaluating the reasonableness of the Settlement, Plaintiffs' Counsel analyzed the likelihood of success on the claims asserted and Plaintiffs' Counsel believe that the claims against Defendants have merit and that the evidence supported the asserted claims. Nevertheless, continuing to litigate against Defendants presented substantial risks, and there was a possibility that Plaintiffs' claims could have been dismissed upon a motion for summary judgment – after extensive and expensive discovery.

---

[7](...continued)
has overseen the successful settlement, mediation and arbitration of hundreds of securities class actions. In addition, he has been appointed Special Master by various Federal Courts in complex litigation. Judge Politan is the recipient of numerous awards for his service on the bench.

Plaintiffs' Counsel also recognize the significant risks necessary to prosecute Lead Plaintiffs' claim against Defendants through trial and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Moreover, Plaintiffs' Counsel is mindful of the many problems of proof under and possible defenses to securities law violations, and therefore, believe that it is in the best interest of the Class to resolve the Action against Defendants for the amount obtained.

As a result of the timing and process of the settlement there is no question that it is the result of serious, informed, non-collusive negotiations supervised by a mediator and free of the taint of fraud or collusion and that counsel's knowledge and experience at the time of the negotiations was a significant factor in ensuring the fairness of the compromise.

In particular, Defendants have vigorously contested liability throughout the litigation. Moreover, the fact that potential damages could be higher than the amount paid in settlement by itself means little in an evaluation of the compromise. In the seminal case of *City of Detroit*, an objector contended that the settlement was improper as a matter of law because the benefits were only a fraction of the recovery sought. The court rejected this contention. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." 495 F.2d at 455. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 445 n.2. *See also Officers for Justice*, 688 F.2d at 628 ("[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair").

Significant weight should be attributed to the belief of experienced counsel that a settlement is in the best interest of the class. *See Williams*, 720 F.2d at 922-23.[8] It is the informed opinion of Plaintiffs' Counsel that, given the uncertainty and substantial expense of continuing to litigate the claims against Defendants, through trial and any appeals, the Settlement is fair, reasonable, and adequate for the Class as a whole.

While Plaintiffs' Counsel believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement and the Plan of Allocation, the benefits to be received by Class Members and Plaintiffs' Counsel's request for an award of attorneys' fees and expenses and counsel's request for reimbursement of the Lead Plaintiffs' expenses. *See* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE ¶23.80[1], at 23-336 (3d ed. 2001).

## V. THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires that, when a class is certified, "the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The proposed notice program fulfills the requirements of due

---

8 *See also Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court "should be hesitant to substitute its own judgment for that of counsel."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993) (finding that views of experienced counsel are "entitled to great weight") (citation omitted).

process by alerting and informing Class Members of (a) the terms of the Settlement; the opportunity to exclude themselves from the settlement; (c) the opportunity to object to the Settlement; and (d) the opportunity to appear and be heard regarding any facet of the proposed Settlement at the final fairness hearing *See* MANUAL FOR COMPLEX LITIGATION (THIRD), *supra,* § 41.43, (1999); H. Newberg, NEWBERG ON CLASS ACTIONS, § 8.34 at 8-111 (3d ed. 1992).

The proposed method of giving notice here meets the requirements of Rule 23(c)(2). As shown by the Preliminary Order in Connection with Settlement Proceedings, filed contemporaneously herewith, the Settlement requires: (1) that a copy of a Notice of Proposed Settlement of Class Action (the "Notice"), substantially in the form attached to the Stipulation as Exhibit B be sent by first-class mail to all Persons in the Class who can be identified through reasonable effort; and (2) that a Summary Notice substantially in the form attached to the Stipulation as Exhibit C, be published in the national edition of INVESTOR'S BUSINESS DAILY.

The Notice itself also meets the requirements of Rule 23(c)(2). It is accurate and informative. It describes the terms of the Settlement; the benefits of the Settlement for Class Members; the date, time, and place of the hearing on final settlement approval; the procedure and deadlines for submitting comments, and objections or requesting exclusion from the Class and the Action altogether; the general terms of the application for attorneys' fees and expenses; and a description of the proposed plan for distributing the Settlement Fund, as well as other matters of possible interest.

### 1. The Proposed Schedule

If the Settlement is granted preliminary approval, Lead Plaintiffs propose the following schedule:

| | |
|---|---|
| Notice mailed to Class Members | 20 business days after the Order of Preliminary Approval of Settlement is entered by the Court |
| Summary noticed published in INVESTOR'S BUSINESS DAILY | 25 business days after the Order of Preliminary Approval of Settlement is entered by the Court |
| Last day for Class Members to object to the Settlement, Plan of Allocation or counsel's request for fees and expenses or to request exclusion from the Settlement | No later than 10 business days before the Final Approval Hearing |
| Plaintiffs' Counsel submits papers in support of final approval of settlement; the Plan of Distribution or counsel's request for fees and expenses | Five business days before the Final Approval Hearing |
| Final Approval Hearing | At the Court's convenience, at least 45 days after the "notice date" (e.g., the date the Notice is initially mailed to the Class) |
| Last day for Class Members to file Proof of Claim forms | 120 days after Notice Date |

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the Proposed Order which will provide: (i) preliminary approval of the settlement; (ii) approval of the form and matter of notice of the Settlement to the Class; and (iii) a hearing date and time to consider final approval of the Settlement.

DATED: December 30, 2005.

Law Offices of William M. Kolb, LLC

By: [signature]
William M. Kolb, Esq.
One Ship Street
Providence, Rhode Island 02903
Tel: (401) 490-8297
Fax: (401) 490-8299

Liaison Counsel for Plaintiffs

Michael I. Behn, Esq.
BEHN & WYETZNER, CHARTERED
55 West Wacker Drive, Suite 950
Chicago, Illinois 60601
Tel: (312) 629-0000
Fax: (312) 327-0266

Ira M. Press, Esq.
KIRBY McINERNEY & SQUIRE, LLP
830 Third Avenue, 10th Floor
New York, New York 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

Plaintiffs' Co-Lead Counsel

Ronald L. Futterman, Esq.
FUTTERMAN & HOWARD, CHTD.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Tel: (312) 427-3600
Fax: (312) 427-1850

Kirk E. Chapman, Esq.
MILBERG WEISS BERSHAD &
SCHULMAN, LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

Plaintiffs' Counsel

Certificate of Service

I hereby certify that on the 30th day of December, 2005, a true and accurate copy of the Memorandum in Support of Plaintiff's' Motion for Preliminary Approval of the Settlement was served by first class mail, postage prepaid, upon the following:

Michael I. Behn, Esq.
Behn & Wyetzner, Chartered
55 W. Wacker Drive
Suite 950
Chicago, Illinois 60601

Ira M. Press, Esq.
Mark Strauss, Esq.
Kirby McInerney & Squire, LLP
830 Third Avenue, 10th Floor
New York, New York 10022

Ronald L. Futterman, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603

David J. Bershad, Esq.
Kirk Chapman, Esq.
Milberg Weiss Bershad Hynes
& Lerach LLP
One Pennsylvania Plaza
New York, NY 10019

Mitchell A. Karlan, Esq.
Aric H. Wu, Esq.
Anthony J. Mahajan, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

John A. Tarantino, Esq.
Paul V. Curcio, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

[signature]